United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 27, 2004**

Charles R. Fulbruge III
Clerk

REVISED SEPTEMBER 13, 2004

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 03-20126

———————————

MARIO ROBERTO MADRIZ-ALVARADO,

Petitioner-Appellant,

versus

JOHN ASHCROFT, Attorney General of the United States,
ROGER D. PIPER, INS Acting District Director,

Respondents-Appellees.

———————————

Appeal from the United States District Court
for the Southern District of Texas

———————————

Before GARWOOD, JOLLY, and CLEMENT, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner-appellant Mario Roberto Madriz-Alvarado, an
alien, appeals the denial of his habeas corpus petition under 28
U.S.C. § 2241 seeking to challenge his removal order.  We affirm.

**Facts and Proceedings Below**

Mario Roberto Madriz-Alvarado (Madriz) is a native and
citizen of Guatemala who entered the United States without

inspection on September 26, 1986, when he was eight years old.

On November 14, 1995, Madriz pleaded guilty in a Texas court to possession, on or about October 27, 1995, of less than one gram of lysergic acid diethylamide (LSD) and was granted a deferred adjudication under Texas Code of Criminal Procedure article 42.12 section 5, being placed on probation for five years and fined $500.[1]  On December 8, 1998, the Immigration and Naturalization

---

[1]Lysergic acid diethylamide (LSD) is a Schedule 1 controlled substance under the Texas Controlled Substance Act, see 4 Vernon's Texas Codes Annotated, Health and Safety, § 481.032 (West 2003, at 42, 45, 46), knowing possession (other than pursuant to a prescription or practitioner's order) of "less than one gram" of which is "a state jail felony," *id*. § 481.115(a) & (b).  A "state jail felony shall be punished by confinement in a state jail for any term of not more than two years or less than 180 days" and in addition there may be imposed "a fine not to exceed $10,000."  Texas Penal Code § 12.35(a) & (b).

Texas Code of Criminal Procedure, Art. 42.12 section 5 provides in part:
"Sec. 5.  (a) . . . when in the judge's opinion the best interest of society and the defendant will be served, the judge may, after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on community supervision. . . . In a Misdemeanor case, the period of community supervision may not exceed two years. . . . The judge may impose a fine applicable to the offense and require any reasonable conditions of community supervision, including mental health treatment . . . that a judge could impose on a defendant placed on community supervision for a conviction that was probated and suspended, including confinement. . . . However, upon written motion of the defendant requesting final adjudication filed within 30 days after entering such plea and the deferment of adjudication, the judge shall proceed to final adjudication as in all other cases.

(b) On violation of a condition of community supervision imposed under Subsection (a) of this section, the defendant may be arrested and detained. . . The defendant is entitled to a hearing limited to the determination by the court of whether it proceeds with an adjudication of guilt on the original charge.  No appeal may be taken from this determination.  After an adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of community supervision, and defendant's appeal continue as if the adjudication of guilt had not been deferred . . . .

(c) On expiration of a community supervision period imposed under

2

Service (INS) charged Madriz with removability, because he was unlawfully present in the United States and because he had been convicted for possession of a controlled substance, under 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(2)(A)(i)(II), respectively.[2]  At his removal hearing, Madriz conceded his

Subsection (a) of this section, if the judge has not proceeded to adjudication of guilt, the judge shall dismiss the proceedings against the defendant and discharge him.  The judge may dismiss the proceedings and discharge a defendant [except in certain sex offense cases] . . . prior to the expiration of the term of community supervision if in the judge's opinion the best interest of society and the defendant will be served. . . . [A] dismissal and discharge under this section may not be deemed a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense.  For any defendant who receives a dismissal and discharge under this section:

(1) upon conviction of a subsequent offense, the fact that the defendant had previously received community supervision with a deferred adjudication of guilt shall be admissible before the court or jury to be considered on the issue of penalty;

(2) if the defendant is an applicant for a license or is a licensee under Chapter 42, Human Resources Code, the Texas Department of Human Services may consider the fact that the defendant previously has received community supervision with a deferred adjudication of guilt under this section in issuing, renewing, denying, or revoking a license under that chapter; . . .
. . .

(f) A record in the custody of the court clerk regarding a case in which a person is granted deferred adjudication is not confidential."

[2]  8 U.S.C. § 1182(a) provides that "aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States."

8 U.S.C. § 1182(a)(6)(A)(i) provides that "an alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

8 U.S.C. § 1182(a)(2)(A)(i) provides "(i) Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of –

(I) a crime involving moral turpitude . . ., or

(II) a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21),

3

removability as an alien present without admission or parole, but contested the charge that his state court controlled substance deferred adjudication was a conviction for immigration purposes.

---

is inadmissible."

8 U.S.C. § 1182(a)(2)(A)(ii) provides that "Clause (i)(I) [dealing with a crime of moral turpitude] does not apply to" an alien whose only crime was committed when under 18 and more than 5 years before application for visa or admission or the maximum penalty for which did not exceed one year's imprisonment and, if sentenced, the sentence did not exceed 6 months. Section (2)(A)(ii) relates only to clause (i)(I), not to clause (i)(II).

Lysergic acid diethylamide is a listed Schedule I controlled substance, listed in Schedule I(c)(9), 21 U.S.C. § 812(c), and is hence a controlled substance as defined in 21 U.S.C. § 802(6).

8 U.S.C. § 1182(h) provides that "The Attorney General may, in his discretion, waive the application of . . . subparagraph (A)(i)(II) of such subsection [§ 1182(a)(2)] insofar as it relates to a single offense of simple possession of 30 grams or less of marihuana if . . . ."

8 U.S.C. § 1227(a) provides in part:

"(a) **Classes of deportable aliens**

Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:

**(1) Inadmissible at time of entry or of adjustment of status or violates status**

**(A) Inadmissible aliens**

Any alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable.

**(B) Present in violation of law**

Any alien who is present in the United States in violation of this chapter or any other law of the United States is deportable.

. . .

**(2) Criminal offenses**

**(A) General crimes**

. . .

**(B) Controlled substances**

**(i) Conviction**

Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."

4

Madriz, informing the Immigration Judge (IJ) that he had an approved visa petition with a current priority date, submitted an application for adjustment of status to that of lawful permanent resident under 8 U.S.C. § 1255(i) as the child of a United States citizen. On May 5, 1999, the IJ sustained both charges of removability, held that by reason of his controlled substance offense Madriz was ineligible for waiver of inadmissibility under 8 U.S.C. § 1255(h) and hence was ineligible for adjustment of status under 8 U.S.C. § 1255(i), and ordered that Madriz be deported to Guatemala. The IJ's decision was upheld by the Board of Immigration Appeals (BIA) in a decision dated December 27, 1999. The BIA specifically rejected Madriz's argument that his controlled substance deferred adjudication was not a conviction for immigration purposes.

On January 27, 2000, Madriz filed with this court a petition for review of the December 27, 1999 order of the BIA. The government moved to dismiss the petition for want of jurisdiction, arguing first that the petition was not timely filed and, alternatively, that pursuant to 8 U.S.C. § 1252(a)(2)(C) this court's jurisdiction over the petition for review was precluded because Madriz was "removable by reason of having committed a criminal offense covered in section 1182(a)(2)." On May 8, 2000, this court granted the government's motion in an order without any statement of reasons or

5

identification of grounds.[3]

On August 29, 2000, Madriz filed an application for writ of habeas corpus under section 2241 in the United States District Court for the Southern District of Texas, challenging his removal order, arguing that his Texas deferred adjudication was not a conviction because if he had been prosecuted in federal court 18 U.S.C. § 3607 would have precluded so considering it and because in any event it was not final. The petition was dismissed for lack of jurisdiction on November 3, 2000 by Judge Hoyt, who ruled that "the Court lacks jurisdiction because a proper forum exists for petitioner to raise all issues concerning his deportation. That avenue or forum is the court of appeals." Madriz did not appeal that decision.

On November 13, 2000, Madriz filed with the BIA a motion to reopen and reconsider. He relied on the decision in *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. Aug. 1, 2000). In *Lujan* the Ninth Circuit reversed in part the BIA's decision in *Matter of Roldan*, 22 I&N Dec. 512 (BIA 1999), on which the BIA had relied in its December 27, 1999 dismissal of Madriz's appeal from the May 5, 1999 decision of the IJ. As the BIA noted in its April 19, 2002 memorandum denying the motion to reopen and reconsider, Madriz filed with that motion "a copy of an order

---

[3]Our order simply states: "It is ordered that respondent's motion to dismiss petition for review for lack of jurisdiction is granted."

6

from the Texas criminal court dated June 9, 1999, terminating his probation after successful completion, and dismissing the drug possession complaint against him pursuant to article 42.12, § 5 of the Texas Code of Criminal Procedure."[4]  The government opposed Madriz's motion to reconsider and reopen on the ground, among others, that it was untimely.  The BIA, by its April 9, 2002 decision, denied the motion to reconsider and to reopen, noting that the regulations, 8 C.F.R. §§ 3.2(b) & 3.2(c), required filing within thirty and ninety days, respectively, of the date of the final administrative decision, which was December 27, 1999, and that the November 13, 2000 "motion to reopen and reconsider is therefore untimely."  The BIA's decision further held that Madriz "has failed to show that an exceptional situation warrants our consideration of his untimely motion to reopen and reconsider in the exercise of discretion," noting that in *Matter of Salazar*, 23 I&N Dec. 223 (BIA 2002) the BIA had held that the decision in *Lujan* would not be applied to cases arising

---

[4]  This was apparently the first occasion that the June 9, 1999 order was before the BIA. It is not mentioned in the BIA's December 27, 1999 decision, nor does Madriz allege, or anything in the record before us reflect, that it was in the administrative record or otherwise available or furnished to the BIA (or mentioned or referred to before the BIA) at any time before November 13, 2000.  Although the record before us contains copies of the BIA's December 27, 1999 and April 9, 2002 decisions, as well as of the IJ's May 5, 1999 decision, it contains no other portions of the administrative record.  The government's motion to dismiss Madriz's January 2000 appeal to this court from the BIA's December 27, 1999 decision does contain, in addition to the BIA's decision and that of the IJ, a copy of the complaint, waiver of indictment, deferred adjudication order and bill of costs in the Texas criminal proceeding which had been admitted in evidence before the IJ.  The administrative record was not filed with this court in connection with the January 2000 attempted appeal.

7

outside of the Ninth Circuit and that, except where *Lujan* applied, *Matter of Roldan* would continue to govern. Madriz did not seek to appeal the BIA's April 9, 2002 denial of his motion to reconsider and reopen.

On May 9, 2002, Madriz filed the instant habeas petition, arguing that his Texas state court deferred adjudication for possession of LSD was not a conviction for immigration purposes. Respondents moved for summary judgment, arguing that the district court lacked subject matter jurisdiction and, alternatively, that Madriz was not entitled to relief on the merits. Madriz filed a cross-motion for summary judgment, claiming that the district court did have jurisdiction over his section 2241 application and that he was entitled to relief because his removal order was a violation of due process and equal protection. The district court referred the matter to a U.S. Magistrate Judge who concluded on October 18, 2002, that the district court did have jurisdiction to entertain the section 2241 habeas application, but recommended that Madriz's application be denied on the merits. The district court, Judge Werlein, adopted the recommendation over Madriz's objections and entered final judgment on December 4, 2002. Madriz timely appealed.

**Discussion**

*1. Standard of Review*

The district court's legal determinations, including those

8

concerning jurisdiction, are reviewed *de novo*. *Rivera-Sanchez v. Reno*, 198 F.3d 545, 546 (5th Cir. 1999). Dismissal of a habeas corpus petition on summary judgment is reviewed *de novo* on appeal. *Kinder v. Purdy*, 222 F.3d 209, 212 (5th Cir. 2000).

If the governing immigration statute does not speak clearly to the question before the court, the BIA's interpretation of ambiguities therein will be upheld if that interpretation is reasonable. *Wilson v. INS*, 43 F.3d 211, 213 (5th Cir. 1995).

*2. The district court's jurisdiction*

The government argues that the district court lacked jurisdiction to entertain Madriz's habeas petition because Madriz was found removable by reason of having committed an offense covered in 8 U.S.C. § 1182(a)(2)(A)(i)(II), and because 8 U.S.C. § 1252(a)(2)(C) provides that "no court shall have jurisdiction to review any final order of removal against an alien by reason of having committed an offense covered in section 1182(a)(2)." Madriz responds that in *INS v. St. Cyr*, 121 S.Ct. 2271, 2278-87 (2001), the Court held section 1252(a)(2)(C) did not preclude resort to habeas relief under section 2241. The government contends that *St. Cyr* does not control where all the issues raised in the section 2241 petition could have been resolved by a court of appeals in ruling on a petition for review

of the BIA's order,[5] and that the only issue raised by Madriz in his habeas petition – namely that his Texas deferred adjudication does not, and may not constitutionally, constitute a conviction under section 1182(a)(2)(A)(i)(II) or otherwise render him removable thereunder – could have been resolved by this court in ruling on its jurisdiction to consider a petition for review of the BIA's decision (or decisions) in his case.  *See, e.g., Santos v. Reno*, 228 F.3d 591, 597 (5th Cir. 2000); *see also Florez-Garza v. INS*, 328 F.3d 797, 802 (5th Cir. 2003).[6]  We pretermit this jurisdictional issue because it has no effect on the disposition

---

[5] *St. Cyr* states:

"*If it were clear that the question of law could be answered in another judicial forum, it might be permissible to accept the INS' reading of § 1252.*  But the absence of such a forum, coupled with the lack of a clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas of such an important question of law, strongly counsels against adopting a construction that would raise serious constitutional questions."  *Id.* at 2287 (emphasis added).

In a footnote called for at the end of the quoted passage, the Court noted "that Congress could, without raising any constitutional questions, provide an adequate substitute through the courts of appeals."  *Id.* at 2287 n.38.

[6] In *Florez-Garza* there were other issues in the habeas case besides the one which controlled our jurisdiction on the appeal from the BIA.  *See id.* at 803 n.6 and 804.

The government also argues that by granting its motion to dismiss Madriz's petition for review for want of jurisdiction we in fact *did* rule, adversely to Madriz, on the sole claim raised in his habeas petition, and hence habeas relief was also barred by the provision of § 1252(d) that "[a] court may review a final order of removal only if – . . . (2) another court has not decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the proceeding was inadequate or ineffective to test the validity of the order."  However, it cannot be determined whether our order granting the government's motion to dismiss for want of jurisdiction was not based only on the government's apparently valid claim of untimeliness and did not reach the alternative § 1252(a)(2)(C) ground.  *See* note 3 *supra* (and accompanying text).

10

of this case inasmuch as we conclude that the district court correctly dismissed Madriz's habeas petition on the merits. *See Seale v. INS*, 323 F.3d 150, 152-57 (1st Cir. 2003) (pretermitting the same issue for essentially the same reasons). *See also Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 497 n.8 (5th Cir. 1988) (en banc) (pretermitting issue of district court's jurisdiction since relief properly denied on merits).[7]

3.  **Madriz's deferred adjudication as a ground for removal.**

(a) *Introduction*

Madriz contends that his November 1995 Texas deferred adjudication for possession of LSD is not a conviction, or grounds for removal, under section 1182(2)(A)(i)(II), see note 2 *supra*, for basically two reasons:

(1) that it was not a "conviction" because it was not final and did not meet the definition of conviction stated in *Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988), and applied to deferred adjudications under Tex. Code Crim. Proc. art. 42.12 Sec. 5 in *Martinez-Montoya v. INS,* 904 F.2d 1018 (5th Cir. 1990), in that on violation of his community supervision he could not be

---

[7] We observe in this connection that this litigation clearly presents a justiciable Article III case or controversy between the parties. Further, whether one accepts the government's view of *St. Cyr*'s construction of the statutory jurisdictional framework or Madriz's view thereof, it is clear that this court is an appropriate judicial forum to resolve the issues presented, whether on review of the district court's habeas ruling or by deciding its own jurisdiction on appeal from the BIA.

11

convicted or sentenced for the underlying offense without a trial

leading to formal adjudication of guilt and sentence, with right

of appeal, and the proceedings against him were ultimately

dismissed and he was discharged in June 1999 on completion of his

community supervision; and

(2) that under the rule of *In Re Manrique*, 21 I&N Dec. 58

(BIA May 19, 1995), and *Lujan-Armendariz v. INS*, 222 F.3d 728

(9th Cir. 2000), Madriz's Texas deferred adjudication for

possession of LSD, even if it were otherwise a final conviction

for immigration purposes, would not be so treated because it was

his first drug offense and had it been prosecuted in federal

court Madriz would have been eligible for favorable treatment,

and ultimate expungement of conviction, under the Federal First

Offender Act (FFOA), 18 U.S.C. § 3607.[8]

---

[8] Section 3607 provides:

"**(a) Pre-judgment probation**.–If a person found guilty of an offense described in section 404 of the Controlled Substances Act (21 U.S.C. 844) –

(1) has not, prior to the commission of such offense, been convicted of violating a Federal or State law relating to controlled substances; and

(2) has not previously been the subject of a disposition under this subsection;

the court may, with the consent of such person, place him on probation for a term of not more than one year without entering a judgment of conviction. At any time before the expiration of the term of probation, if the person has not violated a condition of his probation, the court may, without entering a judgment of conviction, dismiss the proceedings against the person and discharge him from probation. At the expiration of the term of probation, if the person has not violated a condition of his probation, the court shall, without entering a judgment of conviction, dismiss the proceedings against the person and discharge him from probation. If the person violates a condition of his probation, the court shall proceed in accordance with the provisions of section 3565.

12

In holding that Madriz's deferred adjudication was a conviction for purposes of section 1182(2)(A)(i)(II), the BIA relied on 8 U.S.C. § 1101(a)(48)(A), enacted September 30, 1996 as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3309-546, which contained comprehensive amendments to the Immigration and Nationality Act (INA), 66 Stat. 163, as amended, 8 U.S.C. §§ 1101 et seq. Section 1101(a) provides definitions for diverse terms "[a]s used in this chapter," namely Chapter 12 of the INA, 8 U.S.C. §§ 1101-1537. Prior to the enactment of IIRIRA, the INA

---

**(b) Record of disposition**.–A nonpublic record of a disposition under subsection (a), or a conviction that is the subject of an expungement order under subsection (c), shall be retained by the Department of Justice solely for the purpose of use by the courts in determining in any subsequent proceeding whether a person qualifies for the disposition provided in subsection (a) or the expungement provided in subsection (c). A disposition under subsection (a), or a conviction that is the subject of an expungement order under subsection (c), shall not be considered a conviction for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose.

**(c) Expungement of record of disposition**.–If the case against a person found guilty of an offense under section 404 of the Controlled Substances Act (21 U.S.C. § 844) is the subject of a disposition under subsection (a), and the person was less than twenty-one years old at the time of the offense, the court shall enter an expungement order upon the application of such person. The expungement order shall direct that there be expunged from all official records, except the nonpublic records referred to in subsection (b), all references to his arrest for the offense, the institution of criminal proceedings against him, and the results thereof. The effect of the order shall be to restore such person, in the contemplation of the law, to the status he occupied before such arrest or institution of criminal proceedings. A person concerning whom such an order has been entered shall not be held thereafter under any provision of law to be guilty of perjury, false swearing, or making a false statement by reason of his failure to recite or acknowledge such arrests or institution of criminal proceedings, or the results thereof, in response to an inquiry made of him for any purpose."

13

contained no definition of "conviction" (nor was there otherwise any federal statutory definition of "conviction" for purposes of the immigration laws).  Section 322(a) of IIRIRA, 110 Stat. 3009-628, amended section 1101(a) by adding thereto the following definition, codified as section 1101(a)(48)(A):

> "**(48)(A)** The term 'conviction' means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where –
> **(i)** a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty, and
> **(ii)** the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed."

Section 332(c) of IIRIRA, 110 Stat. 3009-629, provides that "[t]he amendments made by subsection (a) shall apply to convictions and sentences before, on, or after the date of enactment of this Act."[9]

---

[9] In *Matter of Punu*, 22 I&N Dec. 224 (BIA 1998), the BIA held that a 1993 Texas deferred adjudication under Tex. Code Crim. Proc. art. 42.12 sec. 5(a) was a conviction for immigration purposes rendering the alien removable because it met the definition of § 1101(a)(48)(A) which superceded that of *Matter of Ozkok* and *Martinez-Montoya*.  In *Matter of Roldan*, 21 I&N Dec. 512 (BIA 1999), the BIA held that a 1993 Idaho deferred adjudication for a first offender's marihuana possession, where the court in 1994, after commencement of immigration proceedings, granted early release from the imposed probation and dismissed the charges, and later granted a motion to set aside the guilty plea, was a conviction under § 1101(a)(48)(A), rendering the alien removable, regardless of whether it met the standards of *Ozkok*, and that *Ozkok* and *Manrique* had both been superceded by § 1101(a)(48)(A).  In *Lujan-Armendariz* the Ninth Circuit, building on its earlier decision in *Garberding v. INS*, 30 F.3d 1187, 1190 (9th Cir. 1994), which in turn had brought about *Manrique*, reversed the BIA's decision in *Roldan*, holding that "as a matter of constitutional equal protection, . . . the benefits of the [Federal First Offender] Act [must] be extended to aliens whose offenses are expunged under state rehabilitative laws, provided that they would have been eligible for relief under the [Federal First Offender] Act had their offenses been prosecuted as federal crimes."  *Lujan-Armendariz*,

14

*(b) Does section 1101(a)(48)(A) by its terms render Madriz's deferred adjudication a conviction for immigration law purposes and, if so, does such application of section 1101(a)(48)(A) violate Madriz's constitutional rights?*

*(i) The language of section 1101(a)(48)(A) covers the deferred adjudication.*

Madriz in November 1995 pled guilty to the LSD possession offense, and the Texas judge, pursuant to Tex. Code Crim. Proc. art. 42.12 sec. 5 (see note 1, *supra*), accepted the plea, heard evidence, found that it substantiated Madriz's guilt, fined him $500 and placed him on five years probation under community supervision, but withheld "adjudication of guilt."[10] According to Madriz, on June 9, 1999, the Texas court dismissed the proceedings against him and discharged him on completion of his community supervision pursuant to the provisions of article 42.12 § 5(a) (see notes 1 and 4 *supra*). Under our holding in *Moosa v. INS*, 171 F.3d 994, 998 & n.2, 1005-06 (5th Cir. 1999), "[t]he text of § 322(a) [§ 1101(a)(48)(A)] could not be more clear" and Madriz's 1995 deferred adjudication constitutes a conviction

222 F.3d at 749. In *Matter of Salazar-Regino*, 23 I&N Dec. 223 (BIA 2002), which involved a Texas deferred adjudication under art. 42.12 sec. 5(a) for possession of marihuana, the BIA held it would not apply *Lujan-Armendariz* to cases arising outside of the Ninth Circuit, concluding, *inter alia*, "that Congress did not intend to provide any exceptions from its statutory definition of conviction [in § 1101(a)(48)(A)] for expungements pursuant to state rehabilitative proceedings."

[10] All this is as called for by the terms of art. 42.12 § 5(a), and is as reflected in the Texas court's November 14, 1995 "Community Supervision Order and Deferment of Adjudication of Guilt" a copy of which was filed with the government's motion to dismiss Madriz's attempted appeal to this court from the BIA's December 27, 1999 decision (see note 4, *supra*). All of this is essentially admitted, and none of it denied, by Madriz.

15

thereunder, and does so notwithstanding the 1999 dismissal of the charges and discharge of Madriz pursuant to article 42.12 section 5(c) and notwithstanding the provision of article 42.12 section 5(c) that such "a dismissal and discharge under this section may not be deemed a conviction for purposes of disqualifications or disabilities imposed by law for conviction of an offense." *See also Herrera v. INS*, 208 F.3d 299 (1st Cir. 2000), noting that the "language" of section 1101(a)(48)(A) "leaves nothing to the imagination," *id*. at 304, and approving *Moosa*, *id*. at 306, 308;[11] *Renteria-Gonzalez v. INS*, 322 F.3d 804, 812-14, 815 (5th Cir. 2002); *id*. at 820-22 (Benavides, J., specially concurring); *Vasquez-Velezmoro v. INS*, 281 F.3d 693, 696-99 (8th Cir. 2002).

*(ii) No implied exception for offenders eligible for FFOA disposition if federally prosecuted*

Madriz further argues in this connection that as the Ninth Circuit held in *Lujan-Armendariz*, the FFOA (section 3607; see note 8 *supra*) was not repealed or limited in application by section 1101(a)(48)(A) so that one whose federal drug charges have been dismissed thereunder would not be considered to have been convicted for purposes of the immigration laws, and that hence an implied exception should be read into section

---

[11] *Herrera* observes that "the emphasis Congress placed on the *original* admission of guilt plainly indicates that a subsequent dismissal of charges, based solely on rehabilitative goals and not on the merits of the charge or on a defect in the underlying proceedings, does not vitiate that original admission." *Id*. at 306.

1101(a)(48)(A) for state deferred adjudications of first offenders for offenses which if prosecuted in federal court would have been eligible for disposition under the FFOA. Even assuming, *arguendo* only, that the provision of the FFOA (§ 3607(b)) that a deferred adjudication and subsequent dismissal thereunder "shall not be considered a conviction for the purposes of a disqualification or disability imposed by law upon conviction of a crime, or for any other purpose" precludes application of the section 1101(a)(48)(A) definition of conviction to a 21 U.S.C. § 844 proceeding dismissed under the FFOA,[12] such a consequence would result only from the applicability of the FFOA to the putative conviction in question and would not to any extent result from any analysis of or ambiguity in the language of section 1101(a)(48)(A). The section 1101(a)(48)(A) definition of conviction, expressly directed to situations where "adjudication of guilt is withheld," "could not be more clear," "leaves nothing to the imagination" and affirmatively and unambiguously includes Madriz's deferred adjudication under Tex. Code of Crim. Proc. art. 42.12 sec. 5. There is simply no warrant, as a matter of statutory interpretation, to make up out of whole cloth some implied

---

[12] We have substantial doubt whether the FFOA controls over the subsequently enacted § 1101(A)(48)(A). As the Seventh Circuit observed in *Gill v. Ashcroft*, 335 F.3d 574, 578 (7th Cir. 2003), ". . . even if a disposition under § 3607 [of the FFOA] counts as a conviction in immigration law, it would not be a conviction for other purposes . . . Thus, § 1101(a)(48)(A) and § 3607(b) may coexist, though the former reduces the domain of the latter."

exception for state deferred adjudications on the basis of an analogy to section 3607.[13]  We agree with the several other courts of appeals that have rejected the same argument that Madriz advances here.  *See Gill v. Ashcroft*, 335 F.3d 574, 579 (7th Cir. 2003) ("It is enough to say that § 3607 has no residual effect on the appropriate characterization of state-law deferred dispositions.  These are handled comprehensively, and exclusively, by § 1101(a)(48)(A)");[14] *Acosta v. Ashcroft*, 341 F.3d 218, 225-26 (3d Cir. 2003); *Vasquez-Velezmoro*, 281 F.3d at 696-99; *Fernandez-Bernal v. Attorney General*, 257 F.3d 1304 (11th Cir. 2001.[15]

*(iii) Equal protection*

Madriz further argues that his contentions in this respect, even if not supportable as a matter of statutory construction,

---

[13]  The immigration laws do contain specific mitigating exceptions to the treatment otherwise accorded thereunder to drug and moral turpitude offenses, such as the exception in § 1227(a)(2)(B)(i) for convictions for "a single offense involving possession for one's own use of 30 grams or less of marijuana" and the parallel exception for small quantity marihuana offenses in § 1182(h) (see note 2, *supra*).  *See also* § 1182(2)(2)(A)(ii) (providing exception to crime of moral turpitude offenses for certain offenses committed when under 18).  The presence of such express exceptions argues against implied exceptions of the kind urged by Madriz.

[14]  *See also Herrera*, 208 F.3d at 308: "Congress enacted section 1101(a)(48)(A) for the express purpose of counteracting (and, thus, correcting) disparities covered by varying state rehabilitative procedures."

[15]  The only court of appeals decision arguably to the contrary is *Lujan-Armendariz.* However, that decision appears to us to ultimately rest not on any construction of § 1101(a)(48)(A) with respect to state deferred adjudications, but rather on constitutional equal protection principles.  222 F.3d at 749.  We consider the equal protection argument in part (iii) below.

18

are constitutionally compelled by the equal protection component of the Fifth Amendment's due process clause.  Again relying on *Lujan-Armendariz*, he contends that section 3607 continues to govern what constitutes a conviction for immigration law purposes and that it denies him equal protection to treat his Texas deferred adjudication as a conviction when had his offense been prosecuted in federal court he would have been eligible for deferred adjudication and dismissal under section 3607. Assuming, *arguendo* only, that section 3607 controls over section 1101(a)(48)(A) for purposes of determining whether a federal offense disposed of under section 3607 is a conviction for immigration law purposes, we nevertheless reject this equal protection contention, as have all the courts of appeals which have considered it, other than the Ninth Circuit.

In light of Congress's plenary power to pass legislation concerning the admission or exclusion of aliens, it is clear that no more searching review than that of rational basis is appropriate.  *See, e.g., Faillo v. Bell*, 97 S.Ct. 1473, 1478 (1977) ("[T]he power to expel or exclude aliens . . . [is] a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.") (citation and internal quotation marks omitted); *Demore v. Kim*, 123 S.Ct 1708, 1711 (2003) ("[I]n the exercise of its broad power over naturalization and immigration, Congress regularly makes

19

rules that would be unacceptable if applied to citizens.")
(citation and internal quotation marks omitted).[16] Under
rational basis review, differential treatment "must be upheld
against equal protection challenge if there is any reasonably
conceivable state of facts that could provide a rational basis
for the classification." *ICC v. Bench Communications*, 113 S.Ct.
2096, 2101 (1993). *See also, e.g., Acosta*, 341 F.3d at 226-27;
*Vasquez-Velezmoro*, 281 F.3d at 697.

We agree with the Third Circuit's *Acosta* opinion that the
equal protection challenge is without merit because

> "[f]amiliar with the operation of the federal criminal
> justice system, Congress could have thought that aliens
> whose federal charges are dismissed under the FFOA are
> unlikely to present a substantial threat of committing
> subsequent serious crimes. By contrast, Congress may
> have been unfamiliar with the operation of state
> schemes that resemble the FFOA. Congress could have
> worried that state criminal justice systems, under the
> pressure created by heavy case loads, might permit
> dangerous offenders to plead down to simple possession
> charges and take advantage of those state schemes to
> escape what is considered a conviction under state
> law." *Acosta*, 341 F.3d at 227.

Essentially the same reasoning was employed in *Vasquez-Velezmoro*
to reject the similar equal protection challenge made there
(involving a 1988 Texas deferred adjudication under Tex. Code
Crim. Proc. art. 42.12 for possession of a controlled

---

[16] And, aliens are not a suspect class. *See Plyler v. Doe*, 102 S.Ct. 2382 (1982).

substance).[17]

There is a further reason that Madriz's equal protection argument fails. That argument assumes, in effect, that if the state judge who granted Madriz deferred adjudication under Tex. Code Crim. Proc. art. 42.12 sec. 5 had been a federal judge and Madriz had been prosecuted for his LSD possession in federal court under 21 U.S.C. § 844(a), the judge would have granted him deferred adjudication under section 3607. Of course, deferred adjudication under section 3607 is discretionary with the court. However, the state judge in Madriz's case determined that the appropriate sentence was five years' probation (and a $500 fine), but deferred adjudication under section 3607 is limited to instances where the court places the defendant "on probation for a term of not more than one year" (and there is no provision for a fine). The judge who thought five years' probation appropriate might well have for that reason declined to grant deferred adjudication under section 3607.[18] Thus, in *Fernandez-Bernal*,

---

[17] In *Vasquez-Velezmoro* the Eighth Circuit observed
". . . we . . . see a rational basis for treating differently state and federal convictions that are expunged. Congress defines the rules of federal criminal procedure, and Congress enacted the FFOA. It is reasonable to grant greater immigration relief to defendants whom it has selected for preferential treatment of their convictions. That is, Congress better knows and can control the pool of defendant aliens who will be eligible for immigration relief via the FFOA, than it can with state defendant aliens rehabilitated through a variety of statutes." 281 F.3d at 698.

[18] We also note other differences between § 3607 (*see* note 8 *supra*) and Tex. Code Crim. Proc. art. 42.12 sec. 5. Under the Texas deferred adjudication system, there is express provision for consideration of the dismissal thereunder for sentencing purposes in the event of conviction

21

the Eleventh Circuit rejected the alien's similar equal

protection argument, stating:

> "Fernandez-Bernal could not have received FFOA
> expungement relief, because he was actually sentenced
> to two years of probation, as well as a term in jail.
> Relief under FFOA § 3607(b) is not available to an
> individual sentenced to a term of probation that
> exceeds one year; nor is it available to anyone
> sentenced to jail time." *Id.* at 1316.
> . . .
> "We conclude that Fernandez-Bernal's drug offense could
> not have been expunged under the FFOA had he received
> his sentence under federal law and, therefore, the BIA
> did not violate equal protection in ordering him
> removed from the United States." *Id*. at 1317 (footnote
> omitted).

In *Vasquez-Velezmoro*, the Eighth Circuit rejected an identical

equal protection challenge to the application of section

1101(a)(48)(A) to a 1986 deferred adjudication under Tex. Code

Crim. Proc. art. 42.12 for possession of a controlled substance,

in which the alien was placed on probation for ten years but two

years later was permitted to withdraw his guilty plea, the

indictment was dismissed and the conviction was set aside.  281

F.3d at 695.  The court expressly agreed with the above noted

rational of *Fernandez-Bernal*.  *Vasquez-Velezmoro*, 281 F.3d at

698.  The court concluded that "treating petitioner differently

---

for a subsequent offense (art. 41.12 sec. 5(c)(1), *see* note 1, *supra*), while § 3607 contains no such provision and such consideration would appear to be at least impliedly precluded in the case of expungement under § 3607(c).  The Texas statute has no provision for expungement and expressly provides that the record of the deferred adjudication is "not confidential" (art. 42.12 sec. 5(f)).  The presence of these provisions in article 42.12 section 5 might incline a judge to more likely grant deferred adjudication thereunder than he or she would if the statute had no such provisions, as is the case in § 3607.

from an alien whose conviction was expunged under the FFOA is not arbitrary or unreasonable.  His sentence was much greater than allowed under the FFOA, so he is not similarly situated to aliens who receive relief under that statute."  *Id*. at 699.[19]

For the reasons above stated, we reject Madriz's equal protection claims.

*(iv) Does section 1101(a)(48)(A), by its terms and the terms of IIRIRA section 322(c) apply to deferred adjudications before its enactment?*

Madriz makes various arguments that the terms of section 322(c) are an insufficiently clear expression of congressional intent to warrant application of section 1101(a)(48)(A) to deferred adjudications entered prior to the enactment of IIRIRA. We rejected all these arguments in *Moosa*, 171 F.3d at 1006-08. Madriz urges that *St. Cyr* in effect supercedes this portion of *Moosa*.  We disagree.  In *St. Cyr*, the Court noted IIRIRA section 322(c) – and other similarly worded sections of IIRIRA – as constituting instances in which Congress did "indicate unambiguously its intention to apply specific provisions retroactively."  *St. Cyr*, 121 S.Ct. at 2289 & n.43 (quoting section 322(c)).  *St. Cyr* clearly supports, rather than undercuts, *Moosa*'s holding in this respect.  Several courts of

---

[19] The Eighth Circuit recognized that its holding in this respect conflicted with the Ninth Circuit's *Lujan-Armendariz*, where the two aliens had been sentenced to three years and five years probation terms respectively, but declined to follow *Lujan-Armendariz*.  *Vasquez-Velezmoro*, 281 F.3d at 696.  We likewise decline to follow *Lujan-Armendariz*.

23

appeals have upheld the application of section 1101(a)(48)(A) to deferred adjudications entered before the enactment of IIRIRA, *see, e.g. Acosta*, 341 F.3d at 220-21 & n.3 (October 1995 Pennsylvania heroin possession deferred adjudication based on nolo plea); *Vasquez-Velezmoro*, 281 F.3d at 695 (1986 controlled substance possession deferred adjudication under Tex. Code Crim. Proc. art. 42.12 based on guilty plea); *Fernandez-Bernal*, 257 F.3d at 1305-06 (nolo contendere based 1991 California deferred adjudication for cocaine possession). We are not aware of court of appeals holdings to the contrary.

*(v) Constitutionality of retroactive application of section 1101(a)(48)(A)*

Madriz contends that it is unconstitutional to apply section 1101(a)(48)(A), enacted in 1996, to his 1995 deferred adjudication, because at the time of the deferred adjudication it was not considered a conviction by reason both of *Ozkok* and *Manrique*. We reject this contention as we did the similar contention in *Moosa* where we noted that "'it is well settled that Congress has the authority to make past criminal activity a new ground for deportation.'" 171 F.3d at 1009 (quoting *Ignacio v. INS*, 955 F.2d 295, 298 (5th Cir. 1992)). *See also, e.g., Mulcahey v. Catalanotte*, 77 S.Ct. 1025, 1026-27 (1957); *Marcello v. Bonds*, 75 S.Ct. 757, 764 (1955). Indeed Congress can do so even for past antisocial conduct that not only did not result in

24

a conviction but was not even criminal when engaged in. *See Galvan v. Press*, 74 S.Ct. 737, 742 (1954) (membership in communist party from 1944 to 1946, made a ground for deportation in 1950 without formerly required proof in particular case that party advocated violent overthrow of the U.S. government, properly applied to alien who was unaware of the party's advocacy of violence); *Harisiades v. Shaughnessy*, 72 S.Ct. 512 (1952) (membership in communist party which terminated prior to enactment of statute making it a ground for deportation, as to alien unaware of party's commitment to violence); *United States v. Sahli*, 216 F.2d 33, 40-41 (7th Cir. 1954).

Madriz further argues in this connection that his 1995 guilty plea in the deferred adjudication must necessarily be considered constitutionally infirm because at the time the deferred adjudication was not a conviction for immigration law purposes and he could not have known that it would become so by the 1996 enactment of IIRIRA. However, it has long been settled that a plea is not rendered constitutionally infirm because the defendant was not aware of the immigration consequences of a conviction pursuant thereto or because counsel or the court failed to advise him thereof. *United States v. Banda*, 1 F.3d 354, 356 (5th Cir. 1993); *United States v. Holton*, 228 F.2d 827, 830 (7th Cir. 1956); WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 3RD § 173 at 192 n.54.

25

We note that Madriz's LSD charge was dismissed *solely* as a result of his satisfactory completion of his sentence to probation as contemplated by Tex. Code Crim. Proc. art. 42.12, and not to any extent because of the merits of the charge, or any question as to Madriz's guilt thereof (which he has never denied) or on account of any defect in the underlying proceedings or any question as to the validity of his guilty plea therein.[20]

We likewise reject Madriz's reliance on *St. Cyr*'s holding that the provisions of IIRIRA section 304(b), eliminating the eligibility for discretionary relief under INA § 212(c) as to aliens convicted of certain crimes, did not apply to aliens convicted of such offenses (pursuant to plea bargains) prior to the enactment of IIRIRA. As previously observed, this holding was not based on constitutional grounds, but was rather grounded on the Court's view that the language of the statute was not

---

[20] We further observe that under § 1101(a)(48)(A), in cases where (as here) "adjudication of guilt has been withheld," there is a conviction if "a judge . . . has found the alien guilty . . . and . . . the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." Here, as required by Tex. Code Crim. Proc. art. 42.12 sec. 5(a), the judge heard evidence and found that it substantiates Madriz's guilt and ordered that some form of punishment, penalty and restraint on Madriz's liberty be imposed. That suffices to meet the terms of § 1101(a)(48)(A). Moreover, § 1182(a)(2)(A)(i) (see note 2 *supra*) extends, *as it likewise did at the time of Madriz's plea*, not only to an alien "convicted of" a controlled substance offense, but also to any alien "who admits having committed" ("or who admits committing acts which constitute the essential elements of") such an offense. Madriz has never retracted his admission of having committed such an offense or asserted that he did not commit such an offense or did not knowingly possess LSD.

sufficiently express or explicit in that respect.[21]

Madriz's constitutional arguments respecting the retroactive application of section 1101(a)(48)(A) lack merit.

## Conclusion

For the reasons stated above, the district court's dismissal of Madriz's section 2241 habeas petition is

AFFIRMED.

---

[21] The *St. Cyr* Court contrasted the provisions of other sections of IIRIRA, including § 322(c), which it deemed to clearly call for retroactive application, with the language of § 304(b), which did not. 121 S.Ct. at 2289 & n. 43. It then went on to state (121 S.Ct. at 2290):

> "As the Court of Appeals noted, the fact that Congress made some provisions of IIRIRA expressly applicable to prior convictions, but did not do so in regard to § 304(b), is an indication 'that Congress did not definitively decide the issue of § 304(b)'s retroactive application to pre-enactment convictions.'"

*St. Cyr* concluded in this connection:

> "We find nothing in IIRIRA unmistakably indicating that Congress considered the question whether to apply its repeal of § 212(c) retroactively to such aliens. We therefore hold that § 212(c) relief remains available for aliens, like respondent, whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." 121 S.Ct. at 2293.