United States Court of Appeals
Fifth Circuit

**F I L E D**

June 15, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 05-60919
_____

MARTY DANSO,

Petitioner,

v.

ALBERTO R. GONZALES, U. S. ATTORNEY GENERAL,

Respondent.

----------------------
Petition for Review of an Order of the
Board of Immigration Appeals
----------------------

Before KING, WIENER, and OWEN, Circuit Judges.

WIENER, Circuit Judge:

Petitioner Marty Danso seeks review of an order of the Board of Immigration Appeals ("BIA") adopting and affirming the decision of an immigration judge ("IJ") that denied Danso's requests for cancellation of removal and adjustment of status, and ordered him removed from the United States. We affirm.

## I.  FACTS & PROCEEDINGS

Danso is citizen of Ghana.  In 1982, he was convicted in England of a crime involving a controlled substance and sentenced to twelve months of imprisonment.[1]  Two years later, Danso

---

[1] The record does not reflect the exact nature of Danso's crime, but he was convicted in the Manchester Crown Court for Fraudulent Evasion of Prohibition on Importation of Controlled Drug (Cannabis).

entered the United States without inspection. After leaving briefly in 1989, he returned, applied for admission, and was paroled into the United States for a period of one year.

In 2002, Danso received a Notice to Appear, charging him with removability as (1) an alien who has been convicted of an offense involving a controlled substance,[2] and (2) a "trafficker" of controlled substances.[3] Danso then filed an immigrant visa petition with the United States Citizenship and Immigration Services ("USCIS") and an application with the IJ for cancellation of removal with adjustment of status. Danso was later charged with removability as an alien not in possession of a valid immigrant visa.[4]

At a preliminary hearing before an IJ, Danso admitted his drug-related conviction in England, and the IJ sustained the charge of removability based on that conviction. The IJ did not sustain the charge based on Danso's alleged "trafficker" status. At a subsequent hearing, Danso conceded removability for failure to maintain a valid immigrant visa, and the IJ sustained that charge of removability as well.

---

[2] 8 U.S.C. § 1182(a)(2)(A)(i)(II).

[3] § 1182(a)(2)(C).

[4] § 1182(a)(7)(A)(i)(I),.

2

At his merits hearing, Danso requested that the IJ suspend removal proceedings to allow the USCIS to adjudicate Danso's pending immigrant visa petition.[5] The IJ issued an oral decision denying Danso's requests for relief and ordering him removed from the United States. Specifically, the IJ (1) denied Danso's request for adjustment of status (or a continuance to pursue same), because, as an arriving alien in removal proceedings, he was ineligible to apply for adjustment of status[6]; and (2) denied Danso's requests for cancellation of removal because his inadmissibility under § 1182(a)(2)(A)(i)(II) barred that relief.

Danso filed an appeal with the BIA, asserting that the IJ wrongly determined that Danso was ineligible for cancellation of removal based on his prior conviction, because that conviction was expunged by effect of British law. This expungement, Danso argued, is analogous to an expungement obtained under the Federal First Offenders Act ("FFOA"), which provides that, if specified conditions are met, the disposition of a <u>federal</u> simple

---

[5] Danso did not make a formal request for termination, but raised the issue of terminating proceedings if his immigrant visa application was approved. The IJ addressed Danso's request as both a request for a continuance and a request for termination.

[6] The IJ relied on 8 C.F.R. § 1245.1(c) (2006), which states: "The following categories of aliens are ineligible to apply for adjustment of status to that of lawful permanent resident . . . (8) Any arriving alien who is in removal proceedings pursuant to [8 U.S.C. § 1225(b)(1) or § 1229]."

possession offense will have no legal effect.[7]  He also argued that the IJ erred in determining that Danso was ineligible for adjustment of status as an arriving alien in removal proceedings. After the BIA adopted and affirmed the IJ's decision, Danso filed this petition for review.

## II.  ANALYSIS

Danso contends that (1) the BIA violated his right to equal protection by not treating his expunged foreign conviction the same as it would a conviction expunged under the FFOA, and (2) the BIA erred as a matter of law in holding that Danso was ineligible for cancellation of removal and adjustment of his status.

## A.  Jurisdiction

Under 8 U.S.C. § 1252(a)(2)(C), we do not have jurisdiction to review "a final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2)."  Under § 1252(a)(2)(D), however, we retain jurisdiction to review "constitutional claims or questions of law."  As Danso's petition for review presents both a constitutional equal-protection claim and a separate question of law, we have jurisdiction to review it on the merits.

---

[7] 18 U.S.C. § 3607.

**B.    Standard of Review**

We review an alien's constitutional claim <u>de novo</u>.[8]  We also review questions of law <u>de novo</u>, deferring, however, to the BIA's interpretation of the statutes and regulations it administers.[9]

**C.    Merits**

**1.    Danso's Equal-Protection Claim**

**a.    <u>Dillingham v. INS</u>**

Danso bases his equal-protection claim on <u>Dillingham v. INS</u>, a case in which the Ninth Circuit held that the constitutional requirements of due process and equal protection prohibit the government from denying "rehabilitation"[10] to an alien previously

_____

[8] <u>United States  v. Lopez-Vasquez</u>, 227 F.3d 476, 481 (5th Cir. 2000).

[9] <u>De La Paz Sanchez v. Gonzales</u>, 473 F.3d 133, 135 (5th Cir. 2006).

[10] The broad term "rehabilitation" describes the effect of a variety of state laws allowing persons found guilty of specified crimes to have their records cleared, usually based on their good behavior for a designated time following the finding of guilt. <u>Lujan-Armendariz v. INS</u>, 222 F.3d 728, 734 n.11 (9th Cir. 2000). There are two basic types of rehabilitative schemes.  In one, a judgment of conviction is entered, but then erased after the defendant has served a period of probation or imprisonment. <u>Id.</u> In the other, which is referred to as "deferred adjudication," no formal judgment of guilt is ever entered. Instead, after the defendant pleads or is found guilty, entry of conviction is deferred, and after a period of good behavior, the charges are dismissed and the defendant is discharged. <u>Id.</u>  When referring to both types of laws, we often use the term "expungement."  As did the Ninth Circuit in <u>Lujan-Armendariz</u>, "[w]e realize that

5

convicted of a simple possession offense and rehabilitated under foreign law, if his post-conviction conduct would qualify him for expungement under the FFOA.[11] We turn therefore, to the applicability of the <u>Dillingham</u> decision to the instant case.

### i. England's Rehabilitation of Offenders Act

As Danso does here, Dillingham contended that his conviction had been expunged by operation of England's Rehabilitation of Offenders Act ("ROA"). The ROA provides that a conviction is treated as "spent," <u>viz.</u> expunged, if an offender complies with his sentence and is not thereafter convicted of an offense within a statutorily specified time.[12] The duration of the

---

'expungement' is to some extent a misnomer, because under a deferred adjudication statute there is no conviction to expunge, as no conviction is ever entered. However, even in such cases, certain findings or other records may be expunged. More important, the use of the term 'expungement' significantly facilitates our discussion. Thus, while the federal law which we describe in some detail-the Federal First Offender Act-is a deferred adjudication law, rather than a vacatur or set-aside law, we will sometimes use the term "expungement" when referring to what occurs under that law, as well as under the various types of state statutes." <u>Id.</u>

[11] 267 F.3d 996, 1006-07 (9th Cir. 2001).

[12] Rehabilitation of Offenders Act, 1974, c. 53, § 1 (Eng.).

The Act provides, in pertinent part, that

(1) Subject to subsection (2) below, where an individual has been convicted, whether before or after the commencement of this Act, of any offence or offences, and the following conditions are satisfied, that is to say--

6

rehabilitative period depends on the length of the original sentence and the age of the offender, but not on the nature of the original offense.[13] After meeting the statutory requirements, "a person who has become a rehabilitated person . . . shall be treated for all purposes in law as a person who has not committed or been charged with or prosecuted for or convicted of or sentenced for the offence or offences which were the subject of that conviction."[14]

---

> (a) he did not have imposed on him in respect of that conviction a sentence which is excluded from rehabilitation under this Act; and
>
> (b) he has not had imposed on him in respect of a subsequent conviction during the rehabilitation period applicable to the first-mentioned conviction in accordance with section 6 below a sentence which is excluded from rehabilitation under this Act;
>
> then, after the end of the rehabilitation period so applicable . . . that individual shall for the purposes of this Act be treated as a rehabilitated person in respect of the first-mentioned conviction and that conviction shall for those purposes be treated as spent.

[13] See id. § 5. Only convictions resulting in sentences of fewer than 30 months can be rehabilitated under the ROA. Id. Dillingham was over eighteen when convicted of simple possession of marijuana, and he received only a fine. Under the ROA, his conviction would be regarded as "spent" after five years. Danso was over eighteen when he was convicted and sentenced to twelve months in prison. His conviction would be regarded as "spent" after ten years. Id. The Attorney General does not dispute that Danso has not been convicted of any crime since his 1982 offense.

[14] Id. § 4.

### ii.  Federal First Offenders Act

The FFOA provides that a court may place a first-offender convicted of simple possession under 21 U.S.C. § 844 on probation for up to one year without entering a judgment of conviction.[15] If the offender complies with the terms of probation, the court must dismiss the proceedings against him and discharge him from probation.[16]  If an offender subject to such a disposition was under the age of twenty-one at the time he committed the offense, the court must, on application of the offender, direct that all references to criminal proceedings against him be expunged from official records.[17]  After such an expungement, the disposition "shall not be considered a conviction for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose."[18]

### iii. The Ninth Circuit's Reasoning

In resolving Dillingham's equal-protection claim, the Ninth Circuit first recognized that "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity," and thus is subject to

---

[15] 18 U.S.C. § 3607(a).

[16] Id.

[17] § 3607(c).

[18] § 3607(b).

8

rational basis review.[19] The court cited its own precedent which established that (1) expungement under the FFOA applies to removal proceedings,[20] (2) "persons who received the benefit of a state expungement law were <u>not</u> subject to deportation as long as they <u>could</u> have received the benefit of the [FFOA] if prosecuted under federal law,"[21] and (3) "persons found guilty of a drug offense who <u>could</u> <u>not</u> have benefited from the FFOA <u>were</u> <u>not</u> <u>entitled</u> to receive favorable immigration treatment, even if they qualified for rehabilitation under state law."[22]

The court stated that "the [BIA's] categorical decision not to recognize foreign expungements for simple drug possession offenses did result in differential treatment between [Dillingham] and persons whose federal and state expungements of identical crimes were honored by the INS."[23] After finding differential treatment, the court examined whether the difference was supported by a rational basis. It concluded that "the

---

[19] <u>Dillingham</u>, 267 F.3d at 1005 (quoting from <u>Heller v. Doe</u>, 509 U.S. 312, 319 (1993)).

[20] <u>Id.</u> (citing <u>Lujan-Armendariz</u>, 222 F.3d at 735).

[21] <u>Id.</u> at 1006 (quoting <u>Lujan-Armendariz</u>, 222 F.3d at 738) (emphasis in original).

[22] <u>Id.</u> (citing <u>Paredes-Urrestarazu v. INS</u>, 36 F.3d 801, 812 (9th Cir. 1994)) (emphasis added).

[23] <u>Id.</u> at 1007.

government's decision establishing an irrebuttable presumption against the validity of foreign expungements [is] unacceptably overbroad," and its purported interest in greater administrative efficiency does not provide a rational basis for "precluding Dillingham from eligibility for adjustment of status, while permitting aliens convicted domestically of identical offenses (and rehabilitated under similar state and federal rehabilitative statues) to seek such relief."[24]

Finally, the Dillingham court addressed whether the BIA's interpretation of the term "conviction" in 8 U.S.C. § 1101(a)(48)(A), which was enacted after the FFOA, was entitled to Chevron deference and effectively superseded the FFOA's applicability to removal cases.[25] The court concluded that, because the later immigration law did not repeal the FFOA in whole or in part, the FFOA unambiguously precluded the government's interpretation, making Chevron deference unwarranted.[26]

### b.   The BIA's Decision

The BIA regarded Danso's contention that his conviction was expunged under British law as "irrelevant," because the ROA "was

---

[24] Id. at 1011.

[25] Id.

[26] Id.

clearly rehabilitative in nature" and did not remove the disposition of Danso's criminal offense from the ambit of § 1101(a)(48)(A)'s definition of "conviction." The BIA also noted that Danso failed to offer any evidence that his conviction was eliminated "on the merits," and ruled that it continued to render him inadmissible under § 1182(a)(2)(A)(i)(II).

### c. Merits

### i. "Conviction" under Immigration Law

We are satisfied that the BIA correctly determined that Danso's British criminal offense resulted in a "conviction," as that term is defined by § 1101(a)(48)(A), which states:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where--
>
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.[27]

None disputes that Danso pleaded guilty to the drug offense in England, thus satisfying the plain language of subsection (i) of the foregoing definition.

---

[27] Emphasis added.

11

### ii. Effect of Foreign Expungement

We agree with the Ninth Circuit's observation that "[a]s a general rule, the BIA does not recognize expungements of controlled substance offenses for federal immigration purposes."[28] We also agree that, in enacting the FFOA, "Congress carved out a narrow exception for [federal] simple possession offenses."[29] We may reverse the BIA's order in this case, however, only if we also accept <u>each</u> of the following propositions: (1) The definition of "conviction" as set forth in § 1101(a)(48)(A) does not preclude the applicability of the FFOA in immigration cases; (2) Equal protection prohibits the government from treating an alien whose conviction is expunged under foreign law differently from one whose conviction is expunged under the FFOA, if the former alien would have been eligible for expungement under the FFOA had he been prosecuted in federal court; and (3) Danso would have been eligible for expungement under the FFOA had he been prosecuted in federal court.

### (a) FFOA in the Immigration Context

Regarding the first of those propositions, we have previously expressed "substantial doubt whether the FFOA controls

---

[28] <u>Dillingham</u>, 267 F.3d at 1005.

[29] <u>Id.</u>

12

over the subsequently enacted § 1101(a)(48)(A)."[30] That section's definition of "conviction" contemplates situations in which "adjudication of guilt has been withheld," but the court "has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." This definition is broad enough to encompass dispositions handled under most deferred adjudication/expungement schemes, including the FFOA. For example, under the FFOA, only an offender who was placed on probation and thereafter met the terms of his probation will have the charges against him dismissed and his records expunged.[31] Despite the eventual expungement, however, such an offender's liberty was nonetheless restrained, as contemplated by § 1101(a)(48)(A).

It is certainly plausible, then, to regard § 1101(a)(48)(A) as superseding or limiting the scope of the FFOA in the immigration context. We need not decide that issue today, though, because Danso's conviction was expunged under foreign law, and we are satisfied that neither equal protection nor due

---

[30] Madriz-Alvarado v. Ashcroft, 383 F.3d 321, 331 n.12 (5th Cir. 2004) (noting with approval the Seventh Circuit's observation in Gill v. Ashcroft, 335 F.3d 574, 578 (7th Cir. 2003), that "even if a disposition under [the FFOA] counts as a conviction in immigration law, it would not be a conviction for other purposes," and "[t]hus, § 1101(a)(48)(A) and [the FFOA] may coexist, though the former reduces the domain of the latter") .

[31] 18 U.S.C. § 3607(a)-(c).

13

process requires the BIA to treat his foreign expungement as it would an expungement under the FFOA.

### (b) Equal Protection

In <u>Madriz-Alvarado</u>, we held that equal protection does not require the BIA to afford a Texas deferred adjudication the same effect as it would an expungement of a federal conviction under the FFOA, even if the alien offender arguably could have availed himself of the FFOA.[32] Like the Ninth Circuit in <u>Dillingham</u>, we recognized that only the deferential rational-basis review of the BIA's decision was required.[33] Unlike the <u>Dillingham</u> court, however, we concluded that a rational basis did exist. Specifically, we agreed with the Third Circuit's assessment in <u>Acosta v. INS</u>,[34] that,

> Familiar with the operation of the federal criminal justice system, Congress could have thought that aliens whose federal charges are dismissed under the FFOA are unlikely to present a substantial threat of committing subsequent serious crimes. By contrast, Congress may have been unfamiliar with the operation of state schemes that resemble the FFOA. Congress could have worried that state criminal justice systems, under the pressure created by heavy case loads, might permit dangerous offenders to plead down to simple possession charges and take advantage of those state schemes to

---

[32] 383 F.3d at 333-34.

[33] <u>Id.</u> at 332.

[34] 341 F.3d 218 (3rd Cir. 2003).

14

escape what is considered a conviction under state law.[35]

We also agreed with the Eight Circuit's analysis in <u>Vasquez-Velezmoro v. INS</u>,[36] that,

> we . . . see a rational basis for treating differently state and federal convictions that are expunged. Congress defines the rules of federal criminal procedure, and Congress enacted the FFOA. It is reasonable to grant greater immigration relief to defendants whom it has selected for preferential treatment of their convictions. That is, Congress better knows and can control the pool of defendant aliens who will be eligible for immigration relief via the FFOA, than it can with state defendant aliens rehabilitated through a variety of statutes.[37]

We are convinced that the Third and Eighth Circuits' reasoning regarding state deferred-adjudication schemes applies with at least equal force to the foreign expungement at issue in this case. Any concerns Congress may have had that the narrow and specific exception it sought to create through the FFOA might become too broad if it included state rehabilitative schemes are even more valid in the context of England's ROA, which operates to expunge <u>every conviction</u> that produces a sentence of 30 months

---

[35] <u>Madriz-Alvarado</u>, 383 F.3d at 332 (quoting <u>Acosta</u>, 341 F.3d at 227.)

[36] 281 F.3d 693 (8th Cir. 2002).

[37] <u>Madriz-Alvarado</u>, 383 F.3d at 332 (quoting <u>Vasquez-Velezmoro</u>, 281 F.3d at 698.)

15

or less, <u>regardless of the nature of the offense</u>.[38]  We hold, therefore, that equal protection does not prohibit IJs or the BIA from refusing to give effect to an expungement under the ROA, even if the alien facing removal arguably could have availed himself of the expungement procedures set forth in the FFOA.

## 2.   Cancellation of Removal

The BIA held that Danso was ineligible for cancellation of removal because he was statutorily inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II), by virtue of his drug-offense conviction. 8 U.S.C. § 1229b(b) provides that,

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien--
>
> . . . .
>
> (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

As we have recognized that the BIA correctly determined that the disposition of Danso's British drug offense was a "conviction" under § 1101(a)(48)(A), we hold that the BIA was also correct in concluding that Danso's conviction rendered him inadmissible and barred cancellation of his removal under § 1229b(b).

## 3.   Adjustment of Status

---

[38] <u>See</u>, <u>supra</u> notes 10 & 11.

Danso further contends that the BIA erred in holding that he was ineligible to adjust his status in removal proceedings (or to receive a continuance to pursue such adjustment), because, as an "arriving alien," he was barred from adjustment of status by 8 C.F.R. § 1245.1(c)(8).[39]   Danso bases his contention on several cases in which other circuits have held that this regulation contradicts the clear language and express intent of 8 U.S.C. § 1255(a),[40] which specifies:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

The government has devoted a substantial portion of its brief to addressing the caselaw cited by Danso.  We need not do so here,

_____

[39] See supra, note 6 for text of the regulation.  Danso concedes his "arriving alien" status.

[40] See Bona v. Gonzales, 425 F.3d 663, 670-71 (9th Cir. 2005) ("Although Congress delegated to the Attorney General the discretionary authority to grant or deny an application for an adjustment of status, 8 U.S.C. § 1255(a), Congress did not delegate to the Attorney General the discretion to choose who was eligible to apply for such relief. Thus, we agree . . . that Congress has spoken to the precise issue of who is eligible to apply for adjustment of status and that 8 C.F.R. § 245.1(c)(8) is directly contrary to this Congressional determination."); Zheng v. Gonzales, 422 F.3d 98 , 114-15 (3rd Cir. 2005) (same); Succar v. Ashcroft, 394 F.3d 8, 24 (1st Cir. 2005) (same).

17

however, as we conclude that Danso is ineligible for adjustment of his status under the plain language of 8 U.S.C. § 1255(a).

Section 1255(a) conditions the Attorney General's discretion to adjust an alien's status on, inter alia, the alien's eligibility to receive an immigrant visa. Danso is not eligible to receive an immigrant visa: He is inadmissible under § 1182(a)(2)(A)(i)(II) because of his prior conviction.[41] Even though § 1182(h) allows the Attorney General, in his discretion, to "waive the application of [§ 1182(a)(2)(A)(i)(II)] . . . insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana," Danso cannot show that his foreign conviction fits this narrow exception. Consequently, we hold that he is not eligible for a status adjustment, regardless of his being an "arriving alien" in removal proceedings.[42]

### III. CONCLUSION

We hold that (1) the BIA did not violate Danso's constitutional right to equal protection by disregarding the foreign expungement of his prior drug conviction, and (2) the BIA

---

[41] Section 1182(a) provides that "aliens who are inadmissible under the following paragraphs are ineligible to receive visas."

[42] We also note that Danso does not even contend that he could have met the third requirement for eligibility for adjustment of status under § 1255(a), that an immigrant visa be "immediately available" to him.

did not err as a matter of law in holding Danso statutorily ineligible for cancellation of removal or adjustment of status. The BIA's order is, in all respects,

AFFIRMED.