IKUTA, Circuit Judge,
with whom
Judges O’SCANNLAIN and CALLAHAN join, concurring in part, dissenting in part, and concurring in the judgment:
In overruling the equal protection holding of Lujan-Armendariz v. INS, 222 F.3d 728 (9th Cir.2000), see Maj. op. at 688-90, the majority corrects a longstanding error in our case law, and I concur in both its reasoning and its result. Having corrected one error, however, the majority then commits another, holding that its overruling of Lujan-Armendariz will apply prospectively only. Because the majority fails to heed the Supreme Court’s warning that prospective decisionmaking is appropriate (if ever) only in certain cir *696 cumstances that are not present here, I respectfully dissent from Parts B and C of the majority opinion.
I
In Harper v. Virginia Department of Taxation, the Supreme Court’s most recent opinion on the prospective application of judicial decisions, the Court expressed grave concerns about whether prospective decisionmaking is ever permissible. 509 U.S. 86, 97-98, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). Harper represents only the latest in a series of Supreme Court decisions that have severely curtailed the power of courts to engage in prospective decisionmaking and have articulated a more traditional view of the judicial power. See Am. Trucking Ass’ns, Inc. v. Smith, 496 U.S. 167, 201, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (Scalia, J., concurring in the judgment) (“[T]he judicial role ... is to say what the law is, not prescribe what it shall be.”); see also Agostini v. Felton, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (“Our general practice is to apply the rule of law we announce in a case to the parties before us.... We adhere to this practice even when we overrule a case.” (citation omitted)).
The Supreme Court began experimenting with prospective decisionmaking during the 1960s. In Linkletter v. Walker, the Court created a doctrine under which courts could deny retroactive effect to a newly announced rule of criminal procedure. 381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). In Chevron Oil Co. v. Huson, it established a similar doctrine for civil cases. 404 U.S. 97, 106-07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Over the next decade or so, the Supreme Court applied both of these doctrines in a number of cases, justified by a range of rationales of varying strength. See James B. Beam Distilling Co. v. Georgia (Beam), 501 U.S. 529, 536, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (citing cases); United States v. Johnson, 457 U.S. 537, 543-45, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) (same).
The Court’s return to a more traditional view of judicial power began with United States v. Johnson. Expressing dissatisfaction with its prior non-retroactivity jurisprudence and declaring that “[rjetroactivity must be rethought,” Johnson, 457 U.S. at 548, 102 S.Ct. 2579 (quoting Desist v. United States, 394 U.S. 244, 258, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting)) (internal quotation marks omitted), Johnson cut back on Linkletter by holding that (subject to certain exceptions) “a decision of th[e] [Supreme] Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered.” Id. at 562, 102 S.Ct. 2579. It was left to (Griffith v. Kentucky, however, to bring the era of criminal non-retro-activity to a close. 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). In Griffith, the Court overruled Linkletter and held that “a new rule [of criminal procedure] is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception[s].” Id. at 328, 107 S.Ct. 708. In explaining its decision, the Court stated that the Linkletter doctrine violated two of the “basic norms of constitutional adjudication.” Id. at 322, 107 S.Ct. 708. First, it violated the “nature of judicial review” because it allowed a court to decide on a new rule of law but then refuse to “apply that rule to all similar cases pending on direct review.” Id. at 322-23, 107 S.Ct. 708. Second, Linkletter’s “selective application of new rules violate[d] the principle of treating similarly situated [parties] the same.” Id.
It is true that Griffith left the civil nonretroactivity doctrine of Chevron Oil untouched. See id. at 322 n. 8, 107 S.Ct. 708. *697 However, the Court subsequently expressed doubts about the viability of nonretroactivity in the civil context, as well, See Beam, 501 U.S. 529, 111 S.Ct. 2439 (six Justices disapproving of selective nonretroactivity in the civil context);[1] Am. Trucking Ass’ns, 496 U.S. 167, 110 S.Ct. 2323 (five Justices rejecting the plurality’s civil nonretroactivity analysis).
The Justices’ misgivings regarding nonretroactivity in the civil context found expression in the Court’s opinion in Harper. justice Thomas, in his opinion for the Qourj. S|;ate¿.
Beam controls this case, and we accordingly adopt a rule that fairly reflects the position of a majority of Justices in *698 Beam: When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.
Harper, 509 U.S. at 97, 113 S.Ct. 2510. The Court explained that it was imposing this rule to further the same “basic norms of constitutional adjudication” that had caused it to eliminate nonretroactivity in the criminal context in Griffith. Id. (internal quotation marks omitted). The Court noted that the “general rule of retrospective effect” for judicial decisions has “governed ‘judicial deeision[making] ... for near a thousand years.’ ” Id. at 94, 113 S.Ct. 2510 quoting Kuhn v. Fairmont Coal Co., 215 U.S. 349, 372, 30 S.Ct. 140, 54 L.Ed. 228 (1910) (Holmes, J., dissenting). In direct contrast to this general rule, the (power to “make rules of law retroactive or prospective as [one] see[s] fit” is “quintessentially” a legislative prerogative.) Id. at 95, 30 S.Ct. 140; see also Griffith, 479 U.S. at 323, 107 S.Ct. 708 (“In truth, the Court’s assertion of power to disregard current law in adjudicating cases before us that have not already run the full course of appellate review, is quite simply an assertion that our constitutional function is not one of adjudication but in effect of legislation.” (quoting Mackey v. United States, 401 U.S. 667, 679, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in the judgment)) (internal quotation mark omitted)). Thus, Harper said, courts “ha[ve] no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently.” 509 U.S. at 97, 113 S.Ct. 2510 (quoting Am. Trucking Ass’ns, 496 U.S. at 214, 110 S.Ct. 2323 (Stevens, J., dissenting)) (internal quotation mark omitted).
Although the reasons for severely limiting non-retroactive decisionmaking are clearly set out in Harper, the Court did not expressly overrule Chevron Oil.[2] See id. We therefore must continue to consider Chevron Oil where we are announcing a new rule of law for the first time and the parties have fairly raised the issue.[3] See Agostini, 521 U.S. at 237, 117 S.Ct. 1997. Harper nonetheless strongly indicated that purely prospective application of a new rule is disfavored even in this situation. In light of Harper’s disapproval of the principle of nonretroactivity, we should interpret the Chevron Oil exception to retro-activity as a narrow one and avoid expanding its application.
*699 II
Chevron Oil sets forth three factors we must consider when determining whether a decision should be applied prospectively only. When narrowly construed, as required by Harper, these factors do not clearly support applying our decision overruling Lmjan-Armendariz non-retroactively; indeed, one factor weighs heavily against a prospective-only application. In addition, both practical and jurisprudential considerations strongly encourage compliance with the Supreme Court’s preferred approach of full retroactivity.
A
The first factor in the Chevron Oil test is whether “the decision to be applied non-retroactively ... establishes] a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.” Chevron Oil, 404 U.S. at 106, 92 S.Ct. 349 (citation omitted). Construed narrowly, this first factor aims at identifying those judicial decisions that unexpectedly enunciate a novel principle of law which may unfairly take litigants by surprise. Our abrogation of Lujan-Armendariz does not meet this criteria; instead, it brings our circuit in line with the rest of the nation. Lujan-Armendariz has long been an outlier in the context of national immigration law; as noted by the majority, since it was decided, “the BIA and every sister circuit to ... address[ ] the issue — eight in total” have soundly rejected its holding.[4] Maj. op. at 689. Given this context, the majority’s decision hardly establishes a “new principle of law.” Chevron Oil, 404 U.S. at 106, 92 S.Ct. 349. To the contrary, the demise of Lujan-Armendariz (at the hands of Congress, the Supreme Court, or the en banc Ninth Circuit) has been “clearly foreshadowed.” Id. Because the majority is taking the unsurprising step of conforming our case law to the rest of the nation rather than adopting an unanticipated new legal rule, this factor does not weigh heavily in favor of non-retroactive application of its decision.
B
The second factor requires us to “weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.” Id. at 106-07, 92 S.Ct. 349.[5] This factor strongly supports retrospective operation.
As the majority acknowledges, Congress’s enactment of a broad definition of “conviction” in IIRIRA, see 8 U.S.C. *700 § 1101(a)(48)(A), clearly expressed its intent “that convictions for state-law simple possession have adverse immigration consequences” even if those convictions are later expunged by the state courts. Maj. op. at 694. In holding that such a result would violate the equal protection rights of aliens convicted of state offenses, Lujan-Armendariz frustrated the realization of Congress’s intent. Today, the majority announces that, contrary to Lujaur-Armendariz, “the constitutional guarantee of equal protection does not require treating, for immigration purposes, an expunged state conviction of a drug crime the same as a federal drug conviction that has been expunged under the FFOA.” Maj. op. at 690. This ruling finally frees immigration judges, the BIA, and this court to apply § 1101(a)(48)(A) as Congress intended and as it has been applied for over a decade outside the Ninth Circuit. By overruling Lujan-Armendariz only prospectively, however, the majority further delays giving effect to a law that Congress enacted over ten years ago, even while the majority repudiates Lujan-Armendariz’s equal protection analysis. The only reasonable conclusion is that the delay caused by this prospective application “retard[sj” the operation of the majority’s new rule. See Chevron Oil, 404 U.S. at 107, 92 S.Ct. 349.
The majority’s contrary conclusion is based on its “assumption” that Congress could not have intended to apply the statute to aliens who may have waived their constitutional rights in reliance on our erroneous precedent. See Maj. op. at 694. This assumption, of course, arises solely from the majority’s belief that Congress would balance the equities the same way it does. But we must discern Congress’s intent from the language of the statutes it enacts, not from our own perspectives on policy. See United States v. Gonzales, 520 U.S. 1, 9-10, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997) (noting that where “the straightforward language” of a statute “leaves no room to speculate about congressional intent,” courts should not “carve out statutory exceptions based on judicial perceptions” of good policy). There is no support in the statute for the majority’s claim that “retroactive application will not further the rule’s operation.” Maj. op at 694. Indeed, by substituting its own intent for that of Congress, the majority usurps Congress’s legislative “prerogative” to make its enactments “retroactive or prospective as [it] see[s] fit,” Harper, 509 U.S. at 95, 113 S.Ct. 2510, and effectively eliminates Chevron Oil’s second factor for any case where a statute is involved (because a court can always impute its own views on equity to Congress). This approach is contrary to Chevron Oil and also expands its scope, contrary to Harper.
C
The third factor instructs us to inquire whether our decision “could produce substantial inequitable results if applied retroactively.” Chevron Oil, 404 U.S. at 107, 92 S.Ct. 349 (internal quotation marks omitted). Given the diversity of relief provided by state expungement statutes, including statutes that allow expungement even when an alien is convicted of drug offenses at trial, see, e.g., CaLPenal Code §§ 1210, 1210.1(e), it is impossible to know the extent to which aliens waived their constitutional rights in reliance on Lujanr-Armendariz. See Maj. op. at 693. But even assuming that aliens did waive their trial rights in the expectation of subsequently avoiding immigration consequences for their offenses, and that defeating such expectations would produce inequitable results, a full consideration of the equities cannot ignore the inequities that will result from the majority’s application of its new rule nonretroactively. The majority’s decision will create significant inequities be *701 tween aliens in the Ninth Circuit who were convicted before the date of this decision and who subsequently had those convictions expunged, and all other aliens with expunged convictions everywhere in the country. The aliens in the first group, whether they actually relied on Lujawr-Armendariz or not, could avoid the immigration consequences of their convictions, while all those in the second group would be deemed to have “convictions” under the plain language of § 1101(a)(48)(A) and would have to suffer such consequences. In short, the majority’s decision will lead to “similarly situated” aliens being treated differently in the future, Harper, 509 U.S. at 95, 113 S.Ct. 2510 (internal quotation marks omitted), with no basis in the Constitution or the statute for the difference.
The majority exacerbates this inequity by choosing to overrule Rice v. Holder, 597 F.3d 952 (9th Cir.2010), retroactively, see Maj. op. at 695-96, while overruling Lujan-Armendariz and its other progeny only prospectively, see Maj. op. at 690, 694-95. Under Harper, because the majority applies its new rule abrogating Rice to Nunez-Reyes, this abrogation “must be given full retroactive effect in all cases still open on direct review.” Harper, 509 U.S. at 97, 113 S.Ct. 2510. In other words, the majority has singled out one unlucky subclass (aliens who may have relied on Rice) from the larger class it has created (aliens who may have relied on Lujarir-Armendariz and its progeny) with no apparent justification other than the fact that Nunez-Reyes’s case happened to fall within the purview of Rice.[6] This runs directly counter to the Supreme Court’s statement in Harper that courts must not allow “the substantive law [to] shift” according to “the particular equities of [an individual party’s] claim[].” Id. (internal quotation marks omitted).
*702 Given that applying our decision overruling Lujavr-Armendariz non-retroactively creates “substantial inequitable results” among similarly situated aliens, Chevron Oil’s third factor does not weigh heavily in favor of a non-retroactive application.[7]
D
In sum, because courts generally “ha[ve] no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently,” Harper, 509 U.S. at 97, 113 S.Ct. 2510 (quoting Am. Trucking Ass’ns, 496 U.S. at 214, 110 S.Ct. 2323 (Stevens, J., dissenting)) (internal quotation mark omitted), the Chevron Oil exception to retroactivity must be treated as a narrow one. At a minimum, then, we should apply the exception only where all three factors clearly favor prospectivity. Because here the second Chevron Oil factor weighs heavily against non-retroactive application, and neither of the other factors provides strong support for a purely prospective decision, Chevron Oil does not support the majority’s decision.
Ill
Where the factors of Chevron Oil do not overwhelmingly support the disfavored approach of non-retroactive application, we should instead give effect to the “general rule of retrospective effect for ... constitutional decisions” that the Supreme Court reaffirmed in Harper. Id. at 94, 113 S.Ct. 2510 (quoting Robinson v. Neil, 409 U.S. 505, 507, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973)). Here, practical and jurisprudential considerations also weigh heavily in favor of retroactive application of our ruling.
Practical concerns are crucial in the area of immigration law, because regulating immigration is the prerogative of the legislative branch. See Garcia-Ramirez v. Gonzales, 423 F.3d 935, 953 (9th Cir.2005) (Gould, J., concurring) (“[T]he Constitution gives the superordinate role to Congress, and not to the federal courts, in regulating the flow and content of immigration to the United States.”). Because Congress has “exclusive power over immigration,” we have frequently stressed the paramount importance of national uniformity in this area. See Cazarez-Gutierrez v. Ashcroft, 382 F.3d 905, 912 (9th Cir.2004) (noting the “strong interest in national uniformity in the administration of immigration laws”); Kahn v. INS, 36 F.3d 1412, 1414 (9th Cir.1994) (“The INA ‘was designed to implement a uniform federal policy,’ and the meaning of concepts important to its application are ‘not to be determined according to the law of the forum, but rather require a uniform federal definition.’ ” (alteration omitted) (quoting Rosario v. INS, 962 F.2d 220, 223 (2d Cir.1992))). By ap *703 plying its decision overruling Lujan-Armendariz non-retroactively, where there is no constitutional reason for doing so, the majority usurps Congress’s authority and derogates from this principle of national uniformity.
The Supreme Court has emphasized the substantial jurisprudential concerns that weigh against non-retroactivity; in fact, the Justices seem to speak directly against the approach adopted by the majority. Justice Souter, joined by Justice Stevens, asserted in Beam that “the Chevron Oil test cannot determine the choice of law by relying on the equities of the particular case.” Beam, 501 U.S. at 543, 111 S.Ct. 2439 (Souter, J., announcing the judgment of the Court). Justice Blaekmun, joined by Justices Marshall and Scalia, wrote that “[t]he nature of judicial review constrains us to consider the case that is actually before us, and, if it requires us to announce a new rule, to do so in the context of the case and apply it to the parties who brought us the case to decide.” Id. at 547, 111 S.Ct. 2439 (Blaekmun, J., concurring in the judgment of the Court). Justice Scalia recognized that judges in a real sense “make” law, but stated that “they make it as judges make it, which is to say as though they were ‘finding’ it — discerning what the law is, rather than decreeing what it is today changed to, or what it will tomorrow be.” Id. at 549, 111 S.Ct. 2439 (Scalia, J., concurring in the judgment). These perspectives commanded a majority of the Court in Harper. Where, as here, the Chevron Oil factors do not clearly support non-retroactivity, the majority’s insistence that our ruling be given only prospective application cannot be squared with Harper and with the Justices’ underlying concerns.[8]
Instead of straining to make the law fit its notion of good policy, the majority should have followed the advice of Harper and reserved prospective decisionmaking for the rare case where all three Chevron Oil factors clearly point toward doing so. Because the majority has abjured this wiser course, I respectfully dissent.

. In an opinion announcing the judgment of the Court, Justice Souter (joined by Justice Stevens) commented: “Griffith cannot be confined to the criminal law. Its equality principle, that similarly situated litigants should be treated the same, carries comparable force in the civil context.” Beam, 501 U.S. at 540, 111 S.Ct. 2439 (Souter, J., announcing the judgment of the Court). He further noted:
Nor, finally, are litigants to be distinguished for choice-of-law purposes on the particular equities of their claims to prospectivity: whether they actually relied on the old rule and how they would suffer from retroactive application of the new. It is simply in the nature of precedent, as a necessary component of any system that aspires to fairness and equality, that the substantive law will not shift and spring on such a basis. To this extent, our decision here does limit the possible applications of the Chevron Oil analysis, however irrelevant Chevron Oil may otherwise be to this case. Because the rejection of modified prospectivity precludes retroactive application of a new rule to some litigants when it is not applied to others, the Chevron Oil test cannot determine the choice of law by relying on the equities of the particular case.
Id. at 543, 111 S.Ct. 2439. Justice White noted that "if the Court in [Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984),] thought its decision to have been reasonably foreseeable and hence not a new rule, there would be no doubt that it would be retroactive to all similarly situated litigants.” Id. at 544-45, 111 S.Ct. 2439 (White, J., concurring in the judgment). Justice Blackmun (joined by Justices Marshall and Scalia) wrote:
I agree that failure to apply a newly declared constitutional rule to cases pending on direct review violates basic norms of constitutional adjudication. It seems to me that our decision in Griffith makes clear that this Court's function in articulating new rules of decision must comport with its duty to decide only "Cases” and "Controversies.” Unlike a legislature, we do not promulgate new rules to "be applied prospectively only,” as the dissent, and perhaps Justice Souter, would have it. The nature of judicial review constrains us to consider the case that is actually before us, and, if it requires us to announce a new rule, to do so in the context of the case and apply it to the parties who brought us the case to decide. To do otherwise is to warp the role that we, as judges, play in a Government of limited powers.
Id. at 547, 111 S.Ct. 2439 (Blackmun, J., concurring in the judgment) (citations omitted). Justice Scalia (joined by Justices Marshall and Blackmun) wrote:
I think, "[t]he judicial Power of the United States” conferred upon this Court and such inferior courts as Congress may establish must be deemed to be the judicial power as understood by our common-law tradition. That is the power "to say what the law is,” not the power to change it. I am not so naive (nor do I think our forebears were) as to be unaware that judges in a real sense “make” law. But they make it as judges make it, which is to say as though they were "finding” it — discerning what the law is, rather than decreeing what it is today changed to, or what it will tomorrow be. Of course this mode of action poses "difficulties of a ... practical sort” when courts decide to overrule prior precedent. But those difficulties are one of the understood checks upon judicial law-making; to eliminate them is to render courts substantially more free to "make new law,” and thus to alter in a fundamental way the assigned balance of responsibility and power among the three branches.
Id. at 549, 111 S.Ct. 2439 (Scalia, J., concurring in the judgment) (citations omitted).

. Whether the Court may have implicitly overruled Chevron Oil has been the subject of some debate. See Bradley Scott Shannon, The Retroactive and Prospective Application of Judicial Decisions, 26 Harv. J.L. & Pub. Pol'y 811, 814 (Summer 2003) (reviewing the Supreme Court's opinions and concluding that the Court has “reverted to a firm rule of retroactive application ... in the civil arena”). Such a conclusion finds support in Landgraf v. USI Film Products, in which the Court stated that “[wjhile it was accurate in 1974 to say that a new rule announced in a judicial decision was only presumptively applicable to pending cases, we have since established a firm rule of retroactivity.” 511 U.S. 244, 279 n. 32, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (citing Harper, 509 U.S. 86, 113 S.Ct. 2510; Griffith, 479 U.S. 314, 107 S.Ct. 708).

. Another restriction on non-retroactivity, not at issue here, is that a new rule of law must always be applied retroactively where it concerns our jurisdiction. See United States ex rel. Haight v. Catholic Healthcare W., 602 F.3d 949, 953 (9th Cir.2010) (citing United States ex rel. Eisenstein v. City of New York, 556 U.S. 928, 129 S.Ct. 2230, 173 L.Ed.2d 1255 (2009)).

. Our sister circuits have consistently rejected our position. See Wellington v. Holder, 623 F.3d 115, 120-22 (2d Cir.2010) (per curiam), cert. denied, - U.S. -, 131 S.Ct. 2960, 180 L.Ed.2d 245 (2011); Danso v. Gonzales, 489 F.3d 709, 716-17 (5th Cir.2007); Ramos v. Gonzales, 414 F.3d 800, 805-06 (7th Cir.2005); Resendiz-Alcaraz v. U.S. Att’y Gen., 383 F.3d 1262, 1271-72 (11th Cir.2004); Elkins v. Comfort, 392 F.3d 1159, 1162-64 (10th Cir.2004); Acosta v. Ashcroft, 341 F.3d 218, 224-27 (3d Cir.2003); Vasquez-Velezmoro v. INS, 281 F.3d 693, 697-98 (8th Cir.2002); cf. Herrera-Inirio v. INS, 208 F.3d 299, 304-09 (1st Cir.2000).

. This factor was adopted from Linkletter, which considered whether the exclusionary rule established by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), should be applied retroactively to cases that were already final. In determining that the purpose of the Mapp rule would not be served by its retroactive application, the Court noted the purpose of the exclusionary rule was the "deter[rence of] lawless police action,” a purpose that would not "at this late date be served by the wholesale release of the guilty victims.” Linkletter, 381 U.S. at 636-37, 85 S.Ct. 1731.

. The majority gives two explanations for its inconsistent treatment of Rice, neither of which is persuasive. First, the majority asserts that Rice was more wrongly decided than Ramirez-Altamirano v. Holder, 563 F.3d 800 (9th Cir.2009), and Cardenas-Uriarte v. INS, 227 F.3d 1132 (9th Cir.2000), because the state offense at issue in Rice (being under the influence) is less like the federal offense covered by FFOA (simple possession) than is the state offense at issue in Ramirez-Altamira-no and Cardenas-Uriarte (possession of drug paraphernalia). As the majority explains, while possession of paraphernalia is a " 'possession crime,' ” being under the influence does not involve any kind of "possession,” and thus it is "qualitatively different from any federal conviction for which FFOA treatment would be available.” Maj. op. at 695. Moreover, the majority asserts that possession of drug paraphernalia is a “lesser offense” than simple possession, whereas being under the influence is not. Id. at 695. But this analysis is completely immaterial, given that all three of these cases, along with Lujan-Armendariz, were wrongly decided because of the same erroneous equal protection analysis; therefore, the majority's comparison of the types of offenses expunged in these cases does not help answer the question why only one of these wrong decisions should be overruled retroactively.
Second, the majority notes that "[t]he parties and amici have presented no evidence that litigants have relied on our very recent decision in Rice." Maj. op. at 695 n. 7. This purported distinction of Rice is also unpersuasive: the parties and amici provided as much "evidence” of reliance on Rice as they did of reliance on any of the other cases. In a word: none. Rather, the "evidence” of reliance cited by the parties and amici amounted to little more than assertions that the defense bar knew of our prior case law and so informed their clients. Of course, that case law included not only Lujan-Armendariz, but also its progeny. See, e.g., Brief for Drug Policy Alliance et al. as Amici Curiae Supporting Petitioner at 6 n.4, 9, Nunez-Reyes v. Holder, No. 05-74350 (9th Cir. Oct. 29, 2010) (explaining that “established criminal defense practice in states within the Ninth Circuit” is based on "the Lujan-Armendariz line of decisions,” which includes Lujan-Armendariz and eight other decisions).

. In its discussion of Chevron Oil’s third factor, the majority repeatedly cites to and quotes from INS v. St. Cyr, 533 U.S. 289, 322-23, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). See Maj. op. at 692-94. St. Cyr is inapposite, however, because it dealt with the retroactive effect of a statute, which is presumed to be prospective. See Landgraf, 511 U.S. at 266, 272, 114 S.Ct. 1483 (holding that in considering the retroactive effect of statutes, we apply a “presumption against retroactiv[ity],” out of a recognition that a "[(legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration”). As the Court made clear in Harper, however, we are to apply the opposite presumption (that is, the "general rule of retrospective effect,” 509 U.S. at 94, 113 S.Ct. 2510) when it comes to judicial decisions, because "[t]o do otherwise is to warp the role that we, as judges, play in a Government of limited powers,” Beam, 501 U.S. at 547, 111 S.Ct. 2439 (Blackmun, J., concurring in the judgment). In other words, the Supreme Court's analysis of "reliance” and "fairness” in St. Cyr, 533 U.S. at 315-25, 121 S.Ct. 2271, cannot dictate our analysis in this case.

. A further explanation of the benefits of a firm rule of retroactivity is set forth in Shannon, supra note 2. Professor Shannon concludes that a firm rule of retroactivity: (1) "is more in accord with the nature of the adjudicative function than alternatives”; (2) "is consistent with traditional understandings of the distinction between holding and dicta”; (3) “is ... consistent with traditional understandings of the doctrine of stare decisis”; and (4) “is superior to prospectivity-based approaches because it better furthers private ordering, fair and efficient adjudication, and public confidence in the judiciary.” Id. at 836-37.